41 C.C.P.A.(Patents)

### Application of SWENTZEL et al. (Carborundum Co., Assignee).
### Patent Appeal No. 6024.

United States Court of Customs
and Patent Appeals.
June 30, 1954.

Rehearing Denied Sept. 15, 1954.

William H. Webb, Washington, D. C. (Donald A. Gardiner, Washington, D. C., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in finally rejecting claims 7, 8 and 24–39 of appellants' application, Serial No. 11,354, for a patent on "Silicon Nitride Articles of Manufacture and Method of Making." Claims 7, 8, 24–29 and 38 are article claims and claims 30–37 and 39 are method claims. No claim has been allowed.

Claim 33 has been rejected as drawn to a non-elected species of the alleged invention. Appellants have not challenged that rejection, therefore, that claim will not be considered on its merits by us. In re Jones, 162 F.2d 638, 34 C.C.P.A., Patents, 1168; In re Kirwan, 171 F.2d 326, 36 C.C.P.A., Patents, 772.

Claims 8, 24 and 30 are considered representative of the appealed claims, and read as follows:

"8. An article of manufacture composed essentially of silicon nitride having the chemical formula $Si_3N_4$, and containing $\frac{1}{2}\%$ to 5% by weight of iron.

"24. A molded article of manufacture composed of self-bonded silicon nitride having the chemical formula $Si_3N_4$ and containing $\frac{1}{2}\%$ to 5% by weight of iron.

"30. A method of making self-bonded silicon nitride articles, the silicon nitride thereof having the chemical formula $Si_3N_4$, which comprises forming an article of the desired shape of finely divided silicon metal having a particle size of 180 mesh and finer and containing $\frac{1}{2}\%$ to 5% by weight of iron, and firing said shape in a non-oxidizing atmosphere containing nitrogen."

Article claims 7, 25 and 38 are very similar to claim 8, while claims 26–29 are very similar to article claim 24. Claims 31, 32, 34–37 and 39 are all similar to method claim 30.

The references relied on are: Egly 866,444 Sept. 17, 1907; Becket 1,386,227 Aug. 2, 1921; J. W. Mellor: (Comprehensive Treatise on Inorganic and Theoretical Chemistry) 1928, Vol. 8, pages 115 & 117.

Appellants' alleged invention is for a method of forming self-bonded silicon nitride bodies having the chemical formula $Si_3N_4$ and the articles formed by such method. It appears that the critical features of the process, as can be seen from the quoted claims, is the use of finely divided silicon metal and the presence of a small amount of iron in the silicon. The articles so formed are said to be non-conductors of electricity, very resistant to chemical action and to have high mechanical strength.

The patent to Egly discloses a process for the manufacture of rods, tubes, etc., having high electrical conductivity and great mechanical, thermal and chemical resistance. The process consists of mixing silicon with other material, such as silicon carbide, "as intimately as possible," forming a suitable solid form, with or without the aid of an "agglutinant," and heating to a temperature at which nitrogen combines with silicon, in an atmosphere containing nitrogen, "until a solid form is obtained." According to the patentee the material mixed with the silicon remains unchanged and is strongly cemented by the silicon nitride, formed by the chemical action of the nitrogen and the silicon, into a dense body.

The patent to Beckct is cited to show that commercial silicon contains "1.5–4% of iron." Appellants, in their application, state that the approximate amount of iron can be provided by use of a commercial grade silicon, "a typical analysis of which gave an iron content of 0.87%."

The Mellor reference discloses a process of making silicon nitride, $Si_3N_4$, by heating silicon between 1300° and 1400° in an atmosphere of nitrogen. According to the reference the total amount of nitrogen absorbed over a seven hour period was 58.54%. The appellants state that their articles "usually show a gain in weight of around 60%," that is, an absorption of that amount of nitrogen by weight. The reference further states that finely divided silicon forms this nitride after ten minutes heating in nitro-gen at 1450°, "whereas crystalline silicon requires several hours." It is also stated in the reference that the electrical resistance of the silicon nitride is very large, and that it is very inert chemically.

The examiner rejected all of the claims, with the exception of claim 33, supra, as unpatentable over Egly in view of Becket. It was the examiner's opinion that, in view of Becket, there would be no invention in using a silicon containing an iron impurity in the process of Egly. The examiner also held that the nitriding in the absence of the other material used by Egly was "within the expected variation."

The Board of Appeals reversed the examiner's rejection based on Egly in view of Becket, but applied a new rejection under the provisions of Rule 196 (b) of the Rules of Practice, 35 U.S.C. A.Appendix. This rejection was based on the disclosures in the Mellor reference. It was the board's opinion that all of the claims were substantially anticipated by Mellor. The board also stated that, in view of Egly, they found nothing inventive in fashioning articles from $Si_3N_4$ alone. In the board's decision it is stated that patentability is not conferred by noting an inherent result of an old process, citing In re Jones, 120 F.2d 1019, 28 C.C.P.A., Patents, 1302, among others, and also that the degree of purity of a substance is ordinarily not a matter of patentable distinction, citing In re Fink, 62 F.2d 103, 20 C.C. P.A., Patents, 716, with another. Appellants allege that the board erred in applying these doctrines to the appealed claims. However, it is noted that the board cited these cases when discussing the limitations as to a small percentage of iron in the silicon used to make the articles. We can see no error in the board's holding that the presence of iron in the silicon was inherent in the prior art references, in view of both the disclosures of Becket and appellants' own specification of iron as an impurity in commercial silicon. We agree with the

board that one "would expect sufficient iron to be present in the raw material used by either Mellor or Egly to satisfy the requirement of the claims." In re Jones, supra, and cases cited therein.

We will first consider the rejection of claims 7, 8, 25 and 38. These claims essentially call for an article of manufacture composed of silicon nitride, $Si_3N_4$, containing ½% to 5% of iron. Claim 38 does not include the limitation as to iron and says that the body of the article of manufacture has a high electrical resistance. Claim 25 calls for a strong, self-bonded silicon nitride material. We believe that claim 38 is obviously fully met by the Mellor disclosure, since Mellor specifically states that silicon nitride, $Si_3N_4$, has a high electrical resistance. Claims 7, 8 and 25 are substantially met by the Mellor reference, since both Becket and appellants disclose that commercial grade silicon contains iron as an impurity within the range specified in the claims. Appellants argue that the term "article" should be construed to mean "bodies of fixed shape and substantial mass." However, these claims call for an "article of manufacture" and one of the uses contemplated by the appellants is "in granular or aggregate form." This latter form would be an "article of manufacture" within the meaning of the term in the claims and therefore the rejection on Mellor must be sustained.

Claims 24 and 26–29 call for a self-bonded, molded article or shaped body of silicon nitride, $Si_3N_4$, containing ½% to 5% of iron, and with various statements as to the hardness and modulus of rupture of the article. These claims were rejected on Mellor in view of Egly. Egly definitely teaches that strong, chemical resistant bodies can be formed by bonding a material silicon converted to silicon nitride. This we believe was the board's rejection where it stated:

"Furthermore, in view of Egly, who forms distinct articles from material in which silicon nitride is formed by nitriding in substantial amounts as cementing agent, we find nothing inventive in fashioning articles from $Si_3N_4$ alone."

Mellor teaches the nitriding of silicon nitride substantially completely from silicon and nitrogen and Egly teaches that silicon nitride is a strong cementing bond. We do not think it inventive to form an article entirely of silicon nitride since it would appear obvious from the prior art that such an article could be formed which would be strong and chemical resistant. Obviously, if silicon nitride forms a very strong bond for other material, it would be at least equally strong if self-bonded. Of course, if the firing of the silicon were done according to Mellor's disclosure, the resulting silicon nitride would be $Si_3N_4$.

The method claims 30–37 and 39 are all rejected on Mellor in view of Egly. Mellor discloses a method of making silicon nitride of the formula $Si_3N_4$ by firing silicon in an atmosphere of nitrogen at a temperature between 1300° and 1400°. He also discloses that finely divided silicon will nitride more quickly than crystalline silicon. Thus, Mellor would seem to disclose almost the entire method set out by appellants with the exception of the use of iron and the forming of the article of the desired shape. We have already discussed the lack of patentability in the use of the iron, and there can be no doubt that Egly teaches the forming of articles of the desired shape before firing in an atmosphere of nitrogen. Therefore, we concur with the board's holding that these claims are unpatentable over the cited references. Appellants argue that the use of a particle size of 180 mesh or smaller is an essential limitation of the claims and is not found in the references. However, we think that the teaching of Mellor of the use of finely divided silicon is sufficient to meet this limitation. Further, in view of the general knowledge of the chemistry art that it is obvious to use finely divided substances to speed the reaction, we do not

think a finding of invention could rest on such a limitation.

We have carefully reviewed all of the arguments of the appellants as well as all of the cases cited. However, in the view we have taken we find it unnecessary to further discuss them in this opinion. For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, J., retired, sat for GARRETT, C. J.